## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**ERIN ROMERO**                                                                    **CIVIL ACTION**

**VERSUS**                                                                          **No. 06-7471**

**TRAVELERS INDEMNITY**                                             **SECTION "C"**
**COMPANY OF CONNECTICUT,**
**ET AL**

## ORDER AND REASONS

Before the Court is a Motion to Remand filed by the plaintiff, Erin Romero ("Romero")

(Rec. Doc. 7), in which she claims that her insurance agent, the Haeuser Insurance Agency

("Haeuser"), was not fraudulently joined and that this Court does not have jurisdiction over her

case under 28 U.S.C. § 1369, the Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA").

Defendant, the Standard Fire Insurance Company ("Standard Fire"), improperly named as

Travelers Indemnity Company of Connecticut, opposes the motion.  The motion is before the

Court on the briefs, without oral argument.  Having considered the memoranda of counsel, the

record and the applicable law, the Court finds that Romero's Motion to Remand is **GRANTED**.


**I. BACKGROUND**

Romero owns the residence located at 472 S. Cleveland Avenue, New Orleans,

Louisiana.  In 1995, she retained Haeuser, a Louisiana insurance agency, as her insurance agent

to place insurance on the property with Standard Fire.  She continuously renewed her policy through the 2004-2005 term and Standard Fire claims that the policy remained substantially unchanged.  Romero asserts that she recently discussed the limits and scope of her policy with Haeuser and requested changes to her policy.

Hurricane Katrina caused damage to Romero's property. After the storm, Romero made a claim to her insurer and discovered that she did not have the coverage that she believed was provided by her insurance policy.  She instituted this suit in the Civil District Court for the Parish of Orleans, State of Louisiana on August 28, 2006 against Standard Fire, Haeuser and others seeking redress for her damages.  Standard Fire removed the action to this Court, alleging diversity jurisdiction and, alternatively, federal question jurisdiction under the MMTJA.  Romero filed this motion to remand asserting that this court lacks subject matter jurisdiction.  Specifically, she claims that Haeuser, a Louisiana resident, was not fraudulently joined to the action and thus this Court does not have diversity jurisdiction.  Furthermore, she claims that this Court does not have jurisdiction under the MMTJA.

## II. ANALYSIS

### A. FRAUDULENT JOINDER

Any civil action may be removed from state court to federal court if it is proven that the federal court has original jurisdiction. See, 28 U.S.C. § 1441 (2006).  The district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.  See, 28 U.S.C. § 1332 (2006).  For diversity jurisdiction to attach, there must be complete diversity, i.e. the

citizenship of every plaintiff must be diverse from the citizenship of every defendant. *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch 267, 2 L.Ed 435 (1806).

In removal actions, the removing party bears the burden of establishing that federal jurisdiction exists. See, *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995), *cert. denied*, 516 U.S. 865 (1995).  The standard for determining when a defendant has been fraudulently joined is well established in the Fifth Circuit.  To demonstrate fraudulent joinder, the party seeking removal must show the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Railroad Co.*, 252 F.3d 220, 222-23 (5th Cir. 2003); See also, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Courts examine "[i]f there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Smallwood*, 352 F.3d at 223 (citing, *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)).  Furthermore, the Fifth Circuit has stated that "[i]f the plaintiff has *any* possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law.  *Rich III v. Bud's Boat Rentals, Inc.*, 1997 WL 785668, *2 (E.D. La. 2003) (citing, *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)) (emphasis added).

A party is considered fraudulently joined when the plaintiff has not or can not state a claim for relief against the individual or entity under the applicable substantive law or does not intend to secure a judgment against that defendant. *Englande v. Glaxo Smithkline*, 206 F. Supp. 2d 815, 817 (E.D. La. 2002) (citing, *Erdey v. American Honda Co., Inc.*, 96 F.R.D. 593, 595 (M.D. La. 1983)).  The key inquiry to a claim of fraudulent joinder is whether the facts as alleged support the plaintiff's substantive claims against the non-diverse defendants.  *Englande*,

206 F. Supp. 2d at 819 (citing *B., Inc.*, 663 F.2d at 545).  This, "stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. . ." *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568, 572 (5th Cir. 2004) (en banc); see also, *Melder v. Allstate Corp*., 404 F.3d 328. 330 (5th Cir. 2005) ("[A]t issue is whether Defendants have established there is no reasonable basis Plaintiff might be able to recover under Louisiana state law against the non-diverse defendant. . .")  A "mere theoretical possibility of recovery" does not preclude a finding of improper joinder.  *Id.*, 385 F.3d at 572.

The Court's determination can be made in two ways: (1) by undertaking a Rule 12(b)(6) - type analysis to determine whether the complaint states a claim against the in-state defendant or (2) whether a claim has been stated by misstated or omitted discrete facts determinative of the propriety of joinder, minimal piercing of the pleadings may be undertaken; "we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* "[T]he inability of the court to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.*

In its Notice of Removal (Rec. Doc. 1), Standard Fire claims that Romero does not have any claims against Haeuser for which relief can be granted.  First, it argues that any claims against Haeuser are perempted by Louisiana Revised Statute § 9:5606.  Next, it asserts that Haeuser did not owe a duty to Romero to independently identify her insurance needs. Finally, Standard Fire argues that Haeuser is improperly joined because any claims against Standard Fire sound in contract and those against Haeuser lie in tort.

Romero asserts that Haeuser was not fraudulently joined.  She argue that the allegations against Haeuser in her state court petition allege a cause of action against the insurance agent under Louisiana law.  Specifically, she claims that Haeuser breached a duty to properly advise her on her insurance coverage.  She alleges that, "within the last year, [she] has conversed with [Haeuser] regarding [the] limits[] [and] scope of coverage regarding hurricane damage, wind within the last three (3) years has made and/or requested changes [to her policy]."

## 1. PEREMPTION

Standard Fire alleges that the claims against Haeuser are perempted under Louisiana Revised Statute § 9:5606.[1]  It claims that Romero purchased the insurance policy in question through Haeuser in 1995 and continuously renewed it through the policy period of September 23, 2004 to September 23, 2005.   Standard Fire alleges that renewal policies did not change any substantive or material restrictions provided by the original policy and that it has always contained a flood exclusion.  See, Rec. Doc. 11.  As a result, Standard Fire argues that the renewals of the insurance policy did not constitute issuances of the policy.  Thus, it asserts that the three year peremption period of Louisiana Revised Statute § 9:5606 started running at the initial issuance of the policy and was never restarted.

---

[1] Louisiana Revised Statute § 9:5606 provides in relevant part:
   A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one  year from the date of the alleged action, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

In general, renewals of insurance policies do not operate to restart peremption. *Southern Athletic Club, LLC v. Hanover Insurance Company, et. al.,* 2006 WL 2583406 *3 (E.D.La. 2006) (citing *Dobson v. Allstate Ins. Co.*, 2006 WL 2078423 *8 (E.D.La. 2006)).  However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages. *Biggers v. Allstate Ins. Co.,* 886 So.2d 1179, 1182, 04-282 (La. App. 5 Cir. 10/26/04).  The inquiry is whether the actions of the insurance agents at the time of renewal can be construed to constitute an act separate from the initial policy procurement.

Here, the Court finds that Standard Fire has not met its burden to establish that there is no reasonable basis to determine that the September 23, 2004 renewal did not constitute an act that was separate and distinct from the original purchase of the insurance policy.  Romero claims that she "conversed" with Haeuser regarding the limits and scope of coverage regarding hurricane damages within the last year and that she has requested changes to her insurance policy within the last three years.  If Romero did request changes in the policy that were never made, these acts may constitute separate torts.  Thus, there is a reasonable possibility under Louisiana law that the claims against Haeuser are not perempted by the three year period provided in Louisiana Revised Statute § 9:5606.

Louisiana Revised Statute § 9:5606 also provides for a one year peremptive period. Romero filed suit on August 28, 2006.  She did not actually know about the alleged actions, omissions or neglect until sometime after Hurricane Katrina, August 29, 2005, when Standard Fire denied her claims.  These dates show that Romero filed suit within one year of when she actually learned of the alleged actions, omissions or neglect.

6

Thus, the inquiry is when Romero should have discovered the alleged actions, omissions or neglect.  Under Louisiana law, an insured has a duty to read his insurance policy and know its provisions.  *Stephens v. Audubon Ins. Co.*, 665 So.2d 683, 686, 27,658 (La. App. 12/6/95) (citing *Matthews v. Business Men's Assur. Co. of America*, 478 So.2d 634, 637 (La. App. 2 Cir. 1985); *Perkins v. Shelter Ins. Co.*, 540 So.2d 488 (La. App. 1 Cir. 1989)).  Romero alleges that Haeuser "held itself out as an agent and/or broker with an expertise in analyzing risk and procuring insurance coverage."  Rec. Doc. 1, Exhibit A.  As a result, Romero claims that Haeuser is liable to her for gaps in her insurance coverage.  Arguably, Romero could have discovered any gaps in her insurance coverage by carefully reading the policy.  At the same time, without further factual development, the Court cannot determine whether Romero was lulled into complacency by representations made by Haeuser.  The facts may disclose that Romero's reliance was well-founded, regardless of the actual language of the policy, and that Romero therefore is excused from its failure to discover the problem earlier.

## 2. FIDUCIARY DUTY

Standard Fire also claims that Haeuser is improperly joined because Haeuser did not owe a fiduciary duty to Romero.  Standard Fire argues that insurance agents do not have a duty to independently advise their clients about the availability or desirability of certain insurance coverages

Under Louisiana law, an insurance agent has a general duty use reasonable diligence in attempting to place the insurance requested and to promptly notify the client if he has failed to obtain the insurance requested.  *Southern Athletic Club*, 2006 WL 2583406 at *4 (citing *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d. 728, 730-31 (La. 1973)).  If the agent's actions

warrant the client's assumption that he has the desired insurance coverage, the client may recover any loss sustained as a result of the agent's breach of his duty to procure such coverage. *Id.* However, an insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client. *Id.* (citing *Graves v. St. Farm Mut. Auto Ins. Co.*, 821 So.2d 769, 773, 2002-1243 (La. Ct. App. 06/26/02)).

Romero suggests that Haeuser assumed such a greater duty. As mentioned above, she claims that Haeuser held itself out as having expertise in analyzing and procuring insurance coverage. She also claims that she discussed the limits and scope of her coverage with Haeuser within the last year. These allegations are sufficient to suggest that the Haeuser assumed a greater duty than merely procuring insurance. Furthermore, Romero alleges that she requested changes to her insurance that were never made, which suggests that Haeuser may have in fact failed to procure insurance. Accordingly, the Court finds that Standard Fire has not established that there is no reasonable basis for Romero's claims against Haeuser.

### 3. Misjoinder of Parties

Alternatively, Standard Fire argues that Haeuser was improperly joined because the actions against Hauser sound in tort while the claims against Standard Fire lie in contract. Romero argues that the joinder is proper because the action seeks redress for the same injury, namely, her lack of insurance coverage. Romero alleges that the claims arise out of the same basic facts and occurrence and both rely on the interpretation of the same insurance policy.

This Court has held that where one plaintiff is suing an insurance company and the insurance agent, there is a reason connection between the claims and the parties. See, *Southern*

*Athletic Club, LLC,* 2006 WL 2583406 at *4; *Fidelity Homestead Ass'n v. Hanover Ins. Co.*, 2006 WL 2873562 (E.D.La.) (J. Berrigan).   This case is similar to those in that the lone plaintiff, is suing her insurance company and insurance agent.  All of the claims arise out of Romero's insurance coverage or lack thereof.  Therefore, the parties are not fraudulently misjoined and diversity jurisdiction is lacking.

### B. Jurisdicion under the Multiparty, Multiforum Trial Jurisdicion Act (MMTJA)

This Court has previously held that the MMTJA is not applicable in cases such as this. Hurricane Katrina itself was not an "accident" within the terms of § 1369.  See, *Fidelity Homestead Ass'n,* 2006 WL 2873562; *Southern Athletic Club, LLC*, 2006 WL 2583406, *6; *Berry v. Allstate Ins. Co.*, 2006 WL 2710588, *3 (E.D.La. 2006) (J. Zainey); *Carroll v. Lafayette Ins. Co.*, 2006 WL 2663013, *3 (E.D.La. 2006) (J. Lemelle); *Southall v. St. Paul Travelers Ins. Co. et. al.,* 2006 WL 2385365, *5 (E.D.La. 2006) (J. Barbier).  Therefore, Standard Fire cannot rely on the MMTJA for federal question subject matter jurisdiction.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Romero's Motion to Remand is hereby **GRANTED**.

New Orleans, Louisiana this 12th day of December, 2006.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE